UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| Plaintiff, : | |
| v.   : | Civil No. 3:18CV550 |
| : | |
| ONE PARCEL OF PROPERTY : | |
| LOCATED AT 550 CRIMSON HAWK : | |
| ROAD, PLYMOUTH, VERMONT, : | |
| WITH ALL APPURTENANCES AND : | |
| IMPROVEMENTS THEREON, : | |
| : | |
| Defendant. : | April 2, 2018 |
| : | |
| [CLAIMANTS: PAUL M. CAMARA : | |
|  AND AMY M. CAMARA] : | |

## VERIFIED COMPLAINT OF FORFEITURE

Plaintiff, United States of America, by and through its attorneys, John H. Durham, United States Attorney for the District of Connecticut, and Julie G. Turbert, Assistant United States Attorney, brings this complaint and alleges as follows in accordance with Rule G(2) of the Supplemental Rules of Admiralty or Maritime Claims and Asset Forfeiture Actions:

## NATURE OF ACTION

1. This is a civil action *in rem* brought to enforce the provision of 18 U.S.C. § 981(a)(1)(A) for the forfeiture of property involved in a financial transaction in violation of 18 U.S.C. § 1956 or 1957, or to enforce the provisions of 18 U.S.C. § 981(a)(1)(C) for the forfeiture of property which constitutes or is derived from proceeds traceable to an offense constituting "specified unlawful activity" (as defined in 18 U.S.C. § 1956(c)(7)), namely, wire fraud in violation of 18 U.S.C. § 1343, or conspiracy to commit such offense.

## **THE DEFENDANT IN REM**

2. The defendant is one parcel of property located at 550 Crimson Hawk Road, Plymouth, Vermont, with all appurtenances and improvements thereon (defendant property), more particularly described in Exhibit A, which is attached hereto at incorporated herein by reference.

3. The record owners of the defendant property are Paul M. Camara and Amy M. Camara.

4. The defendant property is owner occupied residential property.

5. The defendant property was acquired by Paul M. Camara and Amy M. Camara for $355,000 by warranty deed, dated April 13, 2017, and recorded April 17, 2017, in Volume 123, at Page 69 of the Plymouth, Vermont Land Records.

6. The defendant property has a fair market value of approximately $355,000.00.

7. The defendant property has not been seized and is located in the District of Vermont. The United States will, as provided by 18 U.S.C. § 985(b)(1) and (c)(1):

    a.    post notice of this action and a copy of the Complaint on the defendant property, and

    b.    serve notice of this action on the property owners, and any other person or entity who may claim an interest in the defendant property, along with a copy of the Complaint, and

    c.    execute a writ of entry for purposes of conducting an inspection and inventory of the property, and

  d. file a lis pendens in the Plymouth, Vermont Land Records of the defendant property's status as a defendant in this in rem action.

8. The United States will also, as provided in 19 U.S.C. §1606, appraise the defendant property when it executes a Writ of Entry.

## JURISDICTION AND VENUE

9. Plaintiff brings this action *in rem* in its own right to forfeit and condemn the defendant property. This Court has jurisdiction over an action commenced by the United States pursuant to 28 U.S.C. § 1345, and over an action for forfeiture pursuant to 28 U.S.C. § 1355(a).

10. This Court has *in rem* jurisdiction over the defendant property pursuant to 28 U.S.C. 1355(b).

11. Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1)(A), because the acts or omissions giving rise to the forfeiture occurred in this district.

## BASIS FOR FORFEITURE

12. The defendant property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) because it constitutes property involved in a financial transaction in violation of 18 U.S.C. § 1956 or 1957, or pursuant to 18 U.S.C. § 981(a)(1)(C) because it constitutes or is derived from proceeds traceable to an offense constituting "specified unlawful activity" (as defined in 18 U.S.C. § 1956(c)(7)), namely wire fraud in violation of 18 U.S.C. § 1343, or conspiracy to commit such offense.

## RELEVANT ENTITIES

13. Paul Camara is a Principal and 20% owner of Company-2.

14. Company-1 is an insulation contracting company with office locations in

Connecticut and New York.

15. Company-2 is an insulation contracting company with offices in Massachusetts and Connecticut.

16. Company-3 is an insulation contracting company located in Connecticut.

17. Company-4 is an insulation contracting company located in Connecticut.

## SCHEME

18. Company-2, including employees Paul Camara ("Camara") and others, colluded to rig bids and engage in fraud with Company-1, Company-3, and Company-4 in connection with the bidding and award of insulation contracts at public and private entities located throughout the Northeastern United States (including Connecticut, Massachusetts, and New York), from at least as early as October 2011 and continuing to the present.

19. Entities, such as universities, hospitals, and other public and private entities, generally solicit competitive bids from and enter into contracts with mechanical contractors who provide, among other things, plumbing and/or HVAC (heating, ventilation and air conditioning) services on renovation or new construction projects. In turn, mechanical contractors solicit competitive bids from, and enter into subcontracts with, insulation contractors to perform the insulation portion of the work on those plumbing and/or HVAC projects. Depending on the size of the project, the entities may solicit bids from and enter into contracts directly with the insulation contractors, or may solicit bids from and enter into contracts with a general contractor who will, in turn, solicit bids from and enter into contracts with insulation contractors.

20. The confidentiality and independence of the bids are essential to maintaining integrity and fairness during the bidding process, and in ensuring that customers receive the best

4

value. In some cases, bidders are required to certify that they have not engaged in anticompetitive conduct (i.e., by signing certificates of non-collusion or independent pricing).

21. The companies involved in the bid rigging and fraud scheme received contracts through the bidding process in the tens of thousands to millions of dollars, depending on the size of the project.

22. In connection with and in furtherance of their bid rigging and fraud scheme, the participants—including Camara—used the following methods:

    a. Shared proposals, estimates, and other bid information with and among each other, and coordinated bids to ensure that one or more inflated bids were submitted for insulation projects;

    b. Falsely certified that the bid prices submitted for insulation contracts were independently arrived without fraud, collusion or connection of any kind with any other bidder for the same work;

    c. Used email, text messages and other electronic means to share proposals, estimates and other bid information with competitors, and to submit false certifications of independent pricing as part of the bidding or award of insulation contracts;

    d. Utilized shell companies to own or control competitors who also submitted bids on insulation contracts;

    e. Made cash payoffs to other members of the conspiracy;

    f. Moved and used proceeds from the conspiracy by transferring funds from corporate accounts into their personal accounts, retirement accounts, and mortgages.

23. In sum and substance, Camara and others rigged bids for insulation contracts, inflated the prices included on those bids, falsely certified that the bids were arrived out independently or without fraud, and enriched themselves as a result of such conduct.

## THE DEFENDANT PROPERTY

### Use of Company-2's Funds on Defendant Property

24. The money used to purchase the defendant property can be traced from Company-2's accounts, which contained the proceeds of the fraud, through Paul Camara and Amy Camara's checking and saving accounts. Company-2 had checking account ending in 3153 at TD Bank that was opened in 2012 and closed in 2016. The account was labeled "operating account" on the bank statements. Company-2 then opened an "operating account" ending 1602 at Bridgewater Savings Bank. In 2017, Company-2 closed the Bridgewater Savings Bank account and opened a new "operating account" account ending 8704 at Citizens Bank (Company-2 Citizens operating account). All three operating accounts were used in the same way. Payments from contractors were deposited into the Company-2's operating accounts. Company-2 is paid by the mechanical sub-contractors after the project is complete. A review of these accounts indicates that the proceeds of the bid rigging and fraud scheme are deposited into the Company-2 operating account.

26. Company-2 had a checking account at TD Bank ending 3145 that was opened in 2012 and closed in 2016. The account was labeled "payroll account" on the bank statements. Company-2 then opened a "payroll" account at Bridgewater Savings Bank ending 6499. In 2017, the Bridgewater Savings Bank was closed and a new "payroll" account ending 8712 was opened a Citizens Bank (Company-2 Citizens Payroll account). All three payroll accounts were funded

6

directly from the operating accounts.

## Paul Camara and Amy Camara's Checking
## Account Ending 7373 at Bay Coast Bank

27. Paul Camara and Amy Camara opened checking account ending in 7373 at Bay Coast Bank in 2001. From 2013 through February, 2018, Paul Camara deposited over $950,000.00 into this account from Company-2's operating accounts and payroll accounts. Check # 2929 from account # 7373, dated March 26, 2017, in the amount of $5,000.00, was made payable to Four Seasons Sotheby's International Realty, the listing broker for 550 Crimson Hawk Road, Plymouth, Vermont. The memo section of the check contained the notation "deposit Crimson Hawk."

## Paul Camara and Amy Camara's Savings
## Account Ending 4208 at Bay Coast Bank

28. Paul Camara and Amy Camara opened savings account ending 4208 at Bay Coast Bank in 2001. Most of the deposits are transfers from their checking account ending 7373. On January 13, 2017, Paul Camara deposited a $200,000.00 check and a $5,080 from the Company-2 operating account at Bridgewater Savings Bank.

29. On March 30, 2017, there was a withdrawal of $30,000.00 from account #4208 that was issued to purchase a cashier's check for the deposit to purchase 550 Crimson Hawk Road made payable to Four Seasons Sotheby's International.

30. On April 12, 2017, there was a wire transfer from account # 4208 in the amount of $329,895.32 to Liccardi and Crawford, PC, a law firm in Rutland, Vermont, a short distance from Plymouth, Vermont.

31.     On April 13, 2017, a deed was recorded in the Plymouth, Vermont Town Clerk's Office transferring the defendant property to Paul M. Camara and Amy M. Camara for $355,000.00.

## CONCLUSION

32.     The defendant property was involved in a transaction or attempted transaction, or traceable thereto, in violation of 18 U.S.C. §§ 1956 and 1957, or represents property which constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 1343, and is therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A); or that it constitutes or is derived from proceeds traceable to an offense constituting "specified unlawful activity" (as defined in 18 U.S.C. § 1956(c)(7)), namely wire fraud in violation of 18 U.S.C. § 1343, and is therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

WHEREFORE, the United States of America respectfully asserts that there is reasonable belief that the defendant property is subject to forfeiture to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(A) or (C); and requests

   (a) that pursuant to 18 U.S.C. § 985(b)(2), and 18 U.S.C. § 981(j), which permits the Court to "take any action to…preserve the availability of the property subject to civil forfeiture," the Court issue the proposed Writ of Entry submitted with this Verified Complaint of Forfeiture authorizing the United States Marshals Service, or its delegate, to enter the defendant property, including any structures, on one or more occasions during the pendency of this in rem forfeiture action:

(1) for the purpose of conducting an inspection and inventory and appraisal of the defendant property, which inspection and inventory and appraisal may include still and video photography;

(2) to be accompanied on any such occasion by any appraiser(s) selected by it to appraise the condition and value of the defendant property pursuant to 19 U.S.C. § 1606;

(3) to be accompanied on any such occasion by any government or contract personnel selected by it for the purpose of conducting an inventory of the defendant property defendant; and

(4) to be accompanied on any such occasion by any federal, state, or local law enforcement officers selected by it to ensure the safety of any person acting under the Writ of Entry.

(b) that the Court decree that the forfeiture of the defendant property to the United States under 18 U.S.C. §§ 981(a)(1)(A) or (C) is confirmed, enforced, and ordered;

(c) that the Court thereafter order that the United States Marshal, or his delegate, dispose of the defendant property as provided by law; and

    (d) that the Court award Plaintiff United States all other relief to which it is entitled, including the costs of this action.

                                          Respectfully submitted,

                                          JOHN H. DURHAM
                                          UNITED STATES ATTORNEY

                                          */s/ John G. Hughes*
                                          JOHN B. HUGHES
                                          CHIEF, CIVIL DIVISION
                                          ASSISTANT U.S. ATTORNEY

                                          */s/ Julie G. Turbert*
                                          JULIE G. TURBERT
                                          ASSISTANT U.S. ATTORNEY
                                          ATTORNEY BAR #ct23398
                                          157 CHURCH STREET
                                          NEW HAVEN, CT 06510
                                          TELEPHONE: (203) 821-3700
                                          FAX: (203) 773-5373
                                          EMAIL: Julie.Turbert@usdoj.gov

## DECLARATION

I am a Special Agent of the Federal Bureau of Investigation and the case agent assigned the responsibility for this case.

I have read the contents of the foregoing Verified Complaint of Forfeiture, and it is true to the best of my knowledge and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 2nd day of April, 2018.

                    */s/ Russell Frandsen*
                    RUSSELL FRANDSEN
                    SPECIAL AGENT
                    FEDERAL BUREAU OF INVESTIGATION

Being all and the same lands and premises conveyed to George T. Papanier and Julie A. Papanier by Warranty Deed of Michael A. Jarvis dated October 20, 2006 and recorded October 26, 2006 in Book 102, Page 490-492 of the Town of Plymouth Land Records and more particularly described as follows:

"Being all and the same lands and premises conveyed to Michael A. Jarvis by Warranty Deed of Donald A. Barone and Kathleen Barone dated June 21, 2005 and recorded in Book 98, Pages 677-680 of the Town of Plymouth Land Records on June 27, 2005. The lands and premises conveyed herein are more particularly described in the aforesaid deed as follows:

"'Being all and the same lands and premises conveyed to Warranty Deed of Salt Ash Mountain Corporation to Donald A. Barone and Kathleen Barone, by Deed dated November 26, 1984 and recorded November 29, 1984 at Book 47, Page 206 of the Town of Plymouth Land Records, and therein more particularly described in Schedule A attached hereto and made a part hereof."



GOVERNMENT EXHIBIT A